IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA P., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No.  07-5395 |
| | : | |
| HAVERFORD SCHOOL DISTRICT | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                                                                            **June 12, 2009**

Plaintiffs, Vivian P., an 11-year-old child with autism, and her parents, seek an award of $231,832.50 in attorney's fees and $17,720.08 in costs for prevailing in their Individuals with Disabilities in Education Act[1] (IDEA) action against the Haverford School District.[2] The School

---

[1]*See* 20 U.S.C. § 1400 *et seq.*

[2]The $231,832.50 in attorney's fees requested is the sum of $223,112.50, as requested in the fee petition, for 686.5 hours Plaintiffs' counsel David J. Berney expended on the case, up to and including the filing of the fee petition; $6,370, as requested in the timesheets Berney submitted during the hearing on the fee petition, for 19.6 hours Berney expended subsequent to January 28, 2009; and $2,350, as requested in the fee petition, for 23.5 hours expended by Renata Strzalka, Berney's paralegal.
     This sum does not include the $16,607.50 Plaintiffs requested for 51.1 hours expended by Berney in preparing their reply brief in further support of the fee petition. On February 18, 2009, this Court denied Plaintiffs' request to file a reply brief and struck the reply brief from the record. The $16,607.50 in fees sought in connection with that filing is therefore disallowed.
     The attorney's fees in the amount of $8,176.00 and costs in the amount of $25.46 requested for Barbara Ransom of the Public Interest Law Center of Philadelphia are also not included here. Ransom's involvement in the matter was unknown to the Court until the filing of Plaintiffs' fee petition.  Ransom did not appear as counsel for Plaintiffs, nor was it at any time represented anywhere in the record she was involved as counsel.  She did not provide legal services to Plaintiffs. It appears she was involved solely in the capacity of legal consultant to Berney.  This does not entitle her to attorney's fees.  In *Arlington Central School District v. Board of Education*, 548 U.S. 291, 296-304 (2006), the Supreme Court held the IDEA does not allow prevailing plaintiffs to recover the costs of experts or consultants.  The fees and costs requested for hours expended by Ransom are therefore disallowed.  Moreover, I will allow Plaintiffs to recover for the time Berney spent on at least 33 occasions consulting Ransom.  Berney appears to have required these numerous consultations due to his inexperience in the area of special education.  It would be unreasonably burdensome for the School District to be required, on top of that, to reimburse Plaintiffs for

District opposes the request, arguing Plaintiffs' success was limited, the requested hourly rates are unreasonable, the hours billed are excessive, and Plaintiffs cannot recover for most of their costs. The School District proposes an award of $51,464 in attorney's fees and $350 in costs. I will award $94,777.12 in attorney's fees and $473.32 in costs.

**FACTS**

Plaintiffs brought this action seeking an award of five years' compensatory education for the School District's alleged denial of a free and appropriate public education (FAPE) and an order that Vivian be placed full-time in regular education classes. I awarded compensatory education of nearly two-and-a-half years, finding Vivian had been denied FAPE during the second semester of the 2004-2005 school year and from October 14, 2005, through the end of the 2006-2007 school year. I also ordered Vivian be placed in part-time general education and part-time special education, with language arts and math in the resource learning support classroom, and homeroom, lunch, recess, special subjects, science, and social studies in the general education setting, per the School District's proposal,[3] finding this to be the most appropriate placement for Vivian.

**DISCUSSION**

Under the IDEA, this Court has the discretion to award the prevailing party reasonable attorney's fees. 20 U.S.C. § 1415(i)(3). "[P]laintiffs may be considered 'prevailing parties' for attorney[s'] fees purposes if they succeed on any significant issue in litigation which achieves some

---

Ransom's consultation services.

[3]The School District had been advocating a mixed placement for Vivian since October 2007, shortly after Plaintiffs filed their due process hearing request on October 1, 2007, in which Plaintiffs argued for full-time regular placement. I ruled in favor of the School District and against the Plaintiffs on this issue.

of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1933) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Here, it is undisputed Plaintiffs are eligible to recover attorney's fees for prevailing in obtaining about two-and-a-half years of compensatory education.

The party seeking attorney's fees bears the burden of establishing the reasonableness of each factor in the lodestar equation with satisfactory evidence in addition to submitting the attorney's own affidavits. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Washington v. Phila. County County Court of Common Pleas*, 89 F.3d 1031, 1035-36 (3d Cir. 1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). The opposing party "then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode*, 892 F.2d at 1183. The Court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id.* (quoting *Bell v. United Princeton Prop., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989).

A calculation of attorney's fees begins with the lodestar, the product of the appropriate billing rates multiplied by the number of hours the attorneys reasonably expended on the action. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Blum*, 465 U.S. at 888). A reasonable hourly rate is calculated according to the prevailing market rates in the community charged by attorneys of equivalent skill and experience performing work of similar complexity. *Washington*, 89 F.3d at 1035-36. The attorney's usual billing rate is not dispositive. *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). Courts should also "'consider the complexity of the litigation and the sophistication of the services rendered' when setting an attorney's rates." *Melissa G. v. Sch. Dist. of Phila.*, No. 06-5527, 2008

WL 160613, at *3 (E.D. Pa. Jan. 14, 2008) (quoting *Wisdom v. Phila. Housing Auth.*, No. 02-8369, 2003 WL 21545123, at *4 (E.D. Pa. July 7, 2003).

After determining a reasonable hourly rate, the district court must examine the hours requested and exclude those hours that were not reasonably expended. *See Rode*, 892 F.2d at 1183. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.* "Further, the court can reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed." *Id.* (citation omitted and internal quotation marks omitted).

Once the court determines the reasonable hourly rate and the reasonable hours expended, the two figures are multiplied to obtain the lodestar. *Id*. "The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Id.* (citing *Hensley*, 461 U.S. at 434-37). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* If a plaintiff has achieved limited success, even where "claims were interrelated, nonfrivolous, and raised in good faith," a fully compensatory amount may be excessive. *Id.* at 436. The court can adjust the lodestar downward for time spent litigating wholly or partially unsuccessful claims related to the litigation of successful claims. *Rode*, 892 F.2d at 1183. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436-37.

Plaintiffs' attorney's fees request is based on an hourly rate of $325 and 706.1 hours spent on the case by Berney, a sole practitioner,[4] and an hourly rate of $100 and 23.5 hours spent on the case by Strzalka, a paralegal in Berney's office. In support of their fees request, Plaintiffs have submitted chronological lists of tasks along with the time devoted to those tasks, and affidavits regarding the experience of Berney and Strzalka and the prevailing rates in the community. In support of their costs request, Plaintiffs have submitted a list of costs along with invoices, receipts, and statements.

The School District first objects to Berney's hourly rate. Berney submits an affidavit attesting to his legal experience. Berney graduated from the University of Pennsylvania Law School in 1992 and has more than 16 years of legal experience. For the last 12 years, he has had a sole practice called the Law Offices of David J. Berney. Berney also submits the affidavits of Michael Churchill, Lorrie McKinley, and Alan L. Yatvin, attorneys practicing civil rights law in Philadelphia, who attest Berney's rate of $325 is reasonable and well within the range of the prevailing rates for attorneys of similar experience, skill, and credentials in the area.

The School District contends $280 is a more reasonable hourly rate for Berney, in light of the recent $280 hourly rate awarded to Berney in *Melissa G.*, and because this rate better represents Berney's lack of experience in special education law. The School District also argues Berney has not satisfactorily established $325 is a reasonable rate. The School District asserts Berney has provided little evidence of his experience in special education law. The School District further attaches an affidavit prepared by Natalie M. Habert, the School District's counsel, attesting Berney's

---

[4]According to the Law Offices of David J. Berney website, the Internet address of which was provided by Berney, Berney is the firm's only attorney. *See* The Law Offices of David J. Berney, http://www.berneylaw.com (last visited June 12, 2009).

requested hourly rate is not the prevailing market rate for attorneys with his level of experience in the community. As an example, Habert cites the $285 hourly rate of Tanya Alvarado, an attorney with McAndrews Law Offices, P.C., who, like Berney, graduated from law school in 1992, but, unlike Berney, has been practicing special education law almost exclusively since joining McAndrews in 2004. Habert states that on September 29, 2008, Alvarado represented that her hourly rate was $285 for her work as lead counsel in a special education matter. I find Habert's affidavit credible and the example she provides to be persuasive.[5]

Although Berney appears to have appreciable experience in the area of civil rights law, the extent of his experience in special education law is unclear from his affidavit. He states currently about 40% of his practice is devoted to special education matters, and provides what he calls a "partial list" of his "currently active cases or ones that have resolved favorably for the plaintiffs/Parents in the past year," listing a number of case names without cites or identifying information. Pl. Br. Exh. B, 2. At the hearing on the fees petition, Berney represented he had, at that time, 20 active special education cases. The instant case, however, is the only special education case Berney has litigated on the merits in federal court.[6] The affidavits Plaintiffs submit fail to show how

---

[5] A $285 hourly rate for someone of Alvarado's experience is consistent with the hourly rate awarded to Gabrielle Sereni in *Damian J. v. Sch. Dist. of Phila.*, No. 06-3866, 2008 WL 1815302, at *2 (E.D. Pa. Apr. 22, 2008), another special education matter. Sereni, who was lead counsel in the federal action, requested and received an hourly rate of $270. Sereni was an attorney in her ninth year of practice who had practiced special education, education, and civil rights litigation exclusively, and who had a Masters Degree in Education and had taught in the Pennsylvania public school system prior to law school. Because of the specialized skills and advanced degree she brought to her special education practice, in spite of fewer years of actual legal experience, Sereni's rate of $270 for someone in her ninth year is consistent with Alvarado's rate of $285.

[6] Berney represents to this Court he has had three other special education cases "that have actually made their way into federal court," and names *Cynthia J. v. School District of Philadelphia*, No. 00-5313 (E.D. Pa.), *Melissa G. v. School District of Philadelphia*, No. 06-5527, 2008 WL 160613 (E.D.

long Berney has been practicing special education law, what kind of involvement he has had in the cases he lists, or what successes he has had. His frequent consultations with Barbara Ransom, numbering at least 33, and with "educational consultant/advocate" Patricia Amos, numbering at least 55, and the number of hours he has spent on this case demonstrate Berney has little experience in special education matters. Furthermore, Berney made this case needlessly difficult, thought it was not a complex matter. I find Alvarado's hourly rate, in September 2008, of $285 to be persuasive evidence of the prevailing rate at the time of Plaintiffs' fee petition because Alvarado has more than 16 years of experience and has practiced special education law almost exclusively for the last four years.[7] I therefore find an hourly rate of $285 for Berney's services to be reasonable.

Having determined $285 to be a reasonable hourly rate for Berney, I next examine the hours requested for any "excessive, redundant, or otherwise unnecessary hours." *Rode*, 892 F.2d at 1183. The School District first objects to the hours Plaintiffs claim for work on the first administrative action, which was separate from this action. The School District argues Plaintiffs cannot recover for the first administrative action because they were not prevailing parties in that action. I agree.

The first administrative action was the result of the School District's due process hearing request on May 4, 2007. After requesting a change in Vivian's educational placement, Vivian's

---

Pa. Jan. 14, 2008), and *Ferren C. v. School District of Philadelphia*, 595 F.Supp. 2d 566 (E.D. Pa. 2009). Berney Ltr. to the Court (Feb. 18, 2009). In *Cynthia J.*, default was entered against the School District, which failed to answer or enter an appearance. At the district court level, *Melissa G.* was solely an action for attorney's fees and costs. *Ferren C.* was a case brought by the McAndrews firm. David T. Painter and Gabrielle Sereni of McAndrews represented the plaintiffs in *Ferren C.* as early as the administrative due process hearing and continue to be counsel of record in the federal court action. Berney's name appears nowhere in the *Ferren C.* record.

[7]Plaintiffs filed their fee petition in 2008 and the market rate in 2008 must be applied. "The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni*, 259 F.3d 149-150 (citing *Rode*, 892 F.2d at 1188-89).

parents had refused to allow the School District's psychologist to reevaluate Vivian, desiring instead an independent educational evaluation funded by the School District. The School District subsequently filed a due process hearing request. The School District then withdrew its request for a hearing when Vivian's parents agreed to the School District psychologist's reevaluation, and the School District agreed to fund an evaluation by a psychologist of the parents' choosing. The Hearing Officer then terminated the hearing as moot. Vivian's parents appealed, however, on the ground the Hearing Officer's refusal to enter judgment in the parents' favor had deprived them of prevailing party status and their right to obtain attorney's fees. On September 26, 2007, the Appeals Panel affirmed the Hearing Officer's decision, and Plaintiffs appealed. The action before this Court combined Plaintiffs' appeal of the first administrative action and the appeal from the second administrative action. Addressing the appeal from the first administrative action, in my November 24, 2008 Memorandum Opinion, I stated the following: "To the extent Plaintiffs seek a declaration they prevailed in that action, I agree with the administrative decisions the School District's action is moot and affirm the Appeals Panel's decision." *See* Nov. 24, 2008 Mem. & Order at 3 n. 8. Plaintiffs simply did not achieve prevailing party status in the first administrative action. The issues involved in that action are also separate and distinct from the issues in this action, and there is no reason Plaintiffs should recover for time spent on the first action. The hours related to the first action must therefore be excluded.

The School District notes Berney's timesheets reflect he drafted Plaintiffs' due process hearing request on September 28, 2007. Prior to September 28, 2007, Berney expended 129.2 hours on his work for Plaintiffs. Berney is entitled to a reasonable number of hours for familiarizing himself with the case in preparation for filing a due process hearing request. I find 20 hours to be

a reasonable amount of time for Berney to have spent on the task of familiarizing himself with the case in preparation for the filing of a due process hearing request, aside from the actual drafting of the request.  I am persuaded by three examples presented by the School District of reasonable hours expended by plaintiffs' counsel prior to preparing due process hearing requests in special education matters – 7.66 hours by Alvarado, 15.03 hours by another McAndrews attorney, and 18.65 hours by counsel in *Damian J.*  Because Berney has demonstrated little experience in special education matters, and, balancing this against his more than 16 years experience as an attorney, I find it reasonable for Berney to have spent 20 hours familiarizing himself with the case prior to preparing the due process hearing request.  Following the filing of Plaintiffs' due process hearing request on October 1, 2007, Berney spent an additional four hours on the first administrative action, which must be deducted as well.  Therefore, allowing Berney 20 hours for familiarizing himself with the second administrative action, I will exclude 105.2 hours for time Berney spent on the first administrative action.

The School District next objects to 14.8 unnecessary hours in connection with Dr. Alicia Broderick's facilitated communications report.  Plaintiffs moved to supplement the record with Dr. Broderick's report and testimony on an unusual, and controversial, learning and testing methodology called facilitated communication. After strenuously objecting to the School District's request to provide countering evidence, Plaintiffs withdrew Dr. Broderick's testimony and report from consideration in this matter when I granted the School District's request.  This evidence was thus never considered or used for any determination in this case.  I will exclude the 14.8 hours Plaintiffs expended  on Dr. Broderick's report as unnecessary to this litigation.

The School District next identifies hours of excess litigation in which Plaintiffs engaged,

citing excessive time spent preparing for court appearances and excessive filing of motions. A review of Plaintiffs' timesheets shows Berney expended a total of 108.1 hours preparing for a due process hearing held over the course of six days. Specifically, Berney spent 37 hours preparing for the 8.4-hour hearing on November 16, 2007, 12 hours preparing for the 4-hour hearing on November 21, 2007, 6.2 hours for the 5-hour hearing on November 27, 2007, 14.4 hours preparing for the 9.2-hour hearing on November 30, 2007, 3 hours preparing for a 10-hour hearing on November 30, 2007, and 35.5 hours preparing for closing arguments at the 1.2-hour hearing on December 17, 2007. He then spent 16.8 hours converting his closing arguments into a written submission.

      Although Berney spent 37 hours preparing for the hearings at the outset and should have been sufficiently familiar with the case by then, he spent another 35.6 hours preparing for days two through five of the hearings, and an additional 35.5 hours on the closing arguments alone. In light of the hours expended during the pendency of the hearings, hours which I will allow, I find the initial 37 hours excessive and will deduct 22 hours. I also find the 35.5 hours expended for preparing closing arguments for a 1.2-hour hearing excessive. The timesheets reflect 26.2 of those hours were expended in simply reviewing the due process hearing transcripts, which was excessive. Berney should have been familiar with what happened at the hearings, having been Plaintiffs' sole counsel throughout the hearings. In addition, no more than three hours should have been needed to prepare for the final hearing, and I will deduct 32.5 hours. Finally, 16.8 hours converting his closing argument into a written submission was excessive. Berney had already prepared and presented his closing argument by that time. No more than 5.6 hours should have been required, and 11.2 hours will be deducted. A total of 65.7 hours will be deducted from the hours preparing for the due process hearings. *See Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) ("A reasonable fee for

hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court. Under the fee shifting statute, the losing party is expected to pay for hours reasonably spent in the argument and its preparation, but not for excessive hours . . .").

Berney then expended 5.9 hours drafting his appeal to the Appeals Panel, and 18.7 hours drafting a response to the School District's appeal. I find these hours to have been reasonably expended.

After filing Plaintiffs' complaint in federal court, Berney filed an unnecessary motion for preliminary injunction. On April 16, 2008, Plaintiffs moved for preliminary injunction to compel the School District to place Vivian, who was being home schooled at the time, in a regular education classroom full-time. Counsel was aware "[p]reliminary injunctive relief is an extraordinary remedy that preserves the status quo until a trial on the merits may be held and should be granted only in limited circumstances," *ACS Enterprises, Inc. v. Comcast Cablevision*, 857 F.Supp. 1105, 1109 (E.D. Pa. 1994), having laid out the standard in his brief in support of the motion. I scheduled a hearing on the motion, and at the start of the hearing, held an in-chambers conference with parties regarding the motion. I stated to parties preliminary injunction relief was inappropriate because granting the motion would disturb the status quo. The parties agreed a placement decision would be best made following a careful review of the record, and the hearing was terminated. In consideration of Plaintiffs' concern that a placement decision be made in time for Vivian to be enrolled at the commencement of the 2008-2009 school year, I stated I would expedite an order after allowing opportunity for supplementation of the record and argument on the dispositive motions.

I then denied the motion for preliminary injunction, with the understanding of counsel a denial of the motion would maintain the status quo until I could make a determination on the merits. Berney requests 23.5 hours for time expended in drafting the motion and an additional 11.10 hours in preparing for the hearing on the motion.

Even so, Plaintiffs filed a motion for reconsideration of my order denying their motion for preliminary injunction. I denied the motion for reconsideration because, in any event, Plaintiffs' motion met none of the criteria for granting reconsideration.[8] Berney expended 4.5 hours drafting the motion for reconsideration. Berney then filed an appeal and moved for expedited relief in the Third Circuit, expending 12.4 hours on the effort. On August 28, 2008, I issued an expedited order that Vivian be placed in a mixed educational placement. The Third Circuit dismissed Plaintiffs' appeal as moot. Berney expended a total of 51.5 hours in the pursuit of an unnecessary preliminary injunction motion. The entirety will be deducted.

On Plaintiffs' motion for judgment on the administrative record, Berney expended a reasonable 12.9 hours. On drafting a reply brief to Plaintiffs' response, however, Berney expended 19.1 hours. The 9.1 hours he expended on August 3, 2008, should have been sufficient for this task.

---

[8]On August 13, 2008, I denied Plaintiffs' motion for reconsideration because Plaintiffs failed to show any of the grounds for reconsideration, as follows:

> The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Max's Seafood Café, by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). An order "may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available [previously]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.*

*See* Aug. 13, 2008 Order at 1 n.1.

He would have been familiar with the issues on drafting the motion and supporting brief, and his briefing of a reply would have been limited to the arguments raised by the School District. I will deduct 10 hours.

At the hearing on parties' motions for judgment on the administrative record held August 27 and 28, 2008, Plaintiffs were unable to present the expert testimony of Dr. Beverly Evans. I stated I would be issuing the expedited order regarding Vivian's placement for September enrollment immediately following the hearing, but Plaintiffs would be permitted to submit the deposition testimony of Dr. Beverly Evans along with a motion to reconsider by September 12, 2008. Plaintiffs subsequently filed two motions for extension of time to file, which were granted, and finally, on October 17, 2008, Plaintiffs filed Dr. Evans's deposition transcription along with their motion for reconsideration of the August 28, 2008 placement order, expending 20.3 hours on the motion. After the School District filed its response, Plaintiffs filed a seven-page reply brief, and a day later, a two-page supplement to the reply. Berney's timesheets report 7.4 hours expended on the reply brief and the supplement. Berney should have been intimately familiar with the issues involved at this late stage, and expending a total of 27.7 hours on a motion for reconsideration and the reply is excessive. I will allow 7.5 hours for the motion for reconsideration, and 2 hours for the reply, which is a deduction of 18.2 hours from the total fees requested.

The School District also challenges Berney's excessive consultations with outside attorneys and excessive hours spent in conducting research. Plaintiffs cite over 50 hours of time on legal research, at least 33 occasions where Ransom was consulted or contacted, and at least 55 occasions where Amos was contacted. The School District argues Berney should not be claiming an hourly rate commensurate with over 16 years of experience when he is also spending numerous hours on

research and seeking the advice of others. Because I have found an hourly rate of $285 is more reasonable for Berney, whose inexperience is reflected in his extensive consultations with Ransom and Amos and in the lack of evidence showing any length or breadth of experience in special education law, his hours of consultations and research, which would be considered excessive for an experienced attorney, will be allowed here.

On February 17, 2009, during the hearing on Plaintiffs' motion for fees, Berney submitted an additional affidavit and timesheet for hours expended since he expended the 51.1 hours requested in his reply brief in support of the attorney's fees petition. In the February 17, 2009, submission, Berney requested 19.6 hours for hours expended on the case from January 29, 2009 through February 17, 2009. A copy was presented to the School District. Berney also filed a copy of this request on February 18, 2009. The School District did not challenge these hours at the hearing or after the filing. *Rode*, 892 F.2d at 1183 (stating a court cannot "decrease a fee award based on factors not raised at all by the adverse party"). I will therefore allow them. A final total of 440.7 hours is allowed for Berney's work.

As to Strzalka, the School District, citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), objects to her hourly rate of $100. *See id.* at 285-89 (looking to the practice in the relevant market to determine whether paralegal work should be billed separately, and noting that separate billing appears to be the practice in most communities). The School District argues Plaintiffs have not met their burden of showing this method of billing is consistent with the prevailing practice in the community. Plaintiffs provided the affidavits of Churchill and McKinley, which stated a $100 hourly rate for paralegals was reasonable and consistent with the rates charged by paralegals of similar skill and experience. I also conclude it is the prevailing practice in this market to bill

14

paralegal work separately. *See Rode*, 892 F.2d at 1191 (billing paralegal work separately); *Melissa G.*, 2008 WL 160613, at *5 (same); *Powell v. SEPTA*, No. 05-6769, 2007 WL 1795686, at *4 (E.D. Pa. June 19, 2007) (same). The School District provides no countering evidence nor does it suggest a different rate. I find Stzralka's hourly rate to be reasonable.

The School District objects to Strzalka's time entries for work related solely to the first administrative action. Reviewing her time entries for work performed prior to the filing of the second administrative action on October 1, 2007, I find 1.3 hours organizing and opening a new file on March 8, 2007, and 0.1 hours preparing the fee agreement on April 2, 2007, could also have been related to the second action, or obviated the performance of these tasks for the second action. All other entries through September 27, 2007, totaling 14.8 hours, must be excluded as unnecessary because they were part of the first administrative action. Additionally, an entry on November 12, 2007, shows Strzalka expended five hours "organizing exhibits for due process hearing, including numbering each exhibit, coordinating copies of each exhibit, preparing trial binders, etc." Pl. Pet. Ex. D. Five hours was excessive for this straightforward task; one hour would have been sufficient. Four hours will therefore be deducted. The remaining tasks are reasonable and of a paralegal nature, and will be allowed. *See Jenkins by Agyei*, 491 U.S. at 285-88 (holding clerical or secretarial tasks should not be billed at paralegal rates). A total of 7.7 hours is allowed for Strzalka's work.

Based on my determination of reasonable rates and hours for Berney and Strzalka, the applicable lodestar figure is $126,369.50. I will further reduce this amount by 25%, or $31,592.30, for a total of $94,777.12 to reflect plaintiffs' partial success. Plaintiffs brought two claims, asking (1) that this Court find the School District failed to provide FAPE for five years and award compensatory education accordingly, and (2) that the Court order the School District to place Vivian

in general education full-time. Although Plaintiffs were unsuccessful on their second claim, and the two matters are mostly distinct, some of the work on both claims was intertwined by shared facts of Vivian's abilities and educational achievement. Moreover, Plaintiffs' success on their first claim was substantial, winning compensatory education for a significant amount of time. Plaintiffs succeeded in proving Vivian had been denied FAPE and her rights were vindicated. Given the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation, I find a reduction of 25% to be reasonable.[9]

Finally, Plaintiffs seek $17,720.08 in costs for the federal court filing fee, postage, exhibit binders, parking, courier services, mileage, legal research, copies, taxi, court reporter expenses, CD of hearing, transcript, a meal for an expert witness and the client while attending court, and expert and consultant fees. The School District objects to all costs other than the $350 fee for the filing of the federal action.

The IDEA provides "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs" to the parents of "a child with a disability" who is the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). This "was not meant to be an open-ended provision that makes participating States liable for all expenses incurred by prevailing parents in connection with an IDEA case – for example, travel and lodging expenses or lost wages due to time taken off from work." *Arlington*, 548 U.S. 297. "[A]bsent explicit statutory or contractual authorization for the taxation of expenses as costs," federal courts are bound by 28

---

[9]Although the final fees award is a dramatic reduction from the requested amount, the requested amount was considerable. Berney conceded little, unreasonably requesting fees and costs for clearly unsuccessful portions of his case and for unreimbursable items, in a manner characteristic of the contentious spirit with which he has handled this matter.

16

U.S.C. § 1920 and § 1821. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). The following costs are recoverable under § 1920: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828 of this title. 28 U.S.C. § 1920. Section 1821 authorizes travel reimbursement and a $40 per diem for witnesses. *See* 28 U.S.C. § 1821. "The IDEA does not authorize an award of any additional expert fees." *Arlington*, 548 U.S. 297. The Third Circuit "disallows costs for the following non-inclusive list of items: postage and courier fees, overtime, unreasonable author's alterations, motions, and 'non-filed' documents." *Matter of Penn Central Transp. Co.*, 630 F.2d 183, 191 (3d Cir. 1980).

The $350 cost for filing this action in federal court is reimbursable, and will be allowed. Postage and courier fees have been expressly rejected by the Third Circuit, so these costs, totaling $80.68, will be deducted. Costs for exhibit binders,[10] parking, mileage, legal research, attorney travel expenses, court reporter expenses, and meals are not authorized by § 1920. I find these costs are also part of an attorney's overhead, presumably included in the hourly fee. These costs, totaling $1,115.04 will be disallowed. Section 1920 authorizes fees for printed or electronically recorded transcripts and copies "necessarily obtained for use in the case." 28 U.S.C. § 1920. The only items

---

[10] Plaintiffs lump together exhibit binders and copies of exhibits in an entry dated October 15, 2007. The cost of these together is listed as $224.08. I will deduct half of this sum to account for the cost of exhibit binders, which are office supplies included in an attorney's overhead costs, and which should have been listed separately from copies "necessarily obtained for use in the case." 28 U.S.C. § 1920.

that can be identified as such are "copies for hearing," "copies of research for hearing," "copies for reply brief," and "copies of exhibits,"[11] totaling $123.32, which will be reimbursed. The remainder of the copying costs, totaling $142.52, are listed as "copies" or "copying" without explanation and must be rejected. The $26 cost for "a CD of hearing before Judge Sanchez," dated August 5, 2008, could only have been a CD of the preliminary motion hearing. This cost is disallowed because it is related to a motion which was filed unnecessarily, and the fees related to which are also rejected. In addition, the $326.90 cost for "Berry Transcript" is disallowed because Dr. Berry's testimony and report were discounted, and were not necessary to the case. The related transcript cost is therefore disallowed. The $30.60 request for "copies of records for Nancy Bloomfield, Ph.D.," is also disallowed because Dr. Bloomfield was an expert witness on placement, an issue on which Plaintiffs did not prevail. In total, the deducted costs for copying and transcripts add up to $525.72.

Finally, Plaintiffs request expert fees for Patricia Amos, Dr. Nancy Bloomfield, Dr. Suzann Steadman, Dr. Beverly Evans, and Dr. Brian Berry, totaling $15,525. This was an IDEA case.[12] In *Arlington*, the Supreme Court held the IDEA does not allow prevailing parents to recover the costs of experts or consultants. *See Arlington*, 548 U.S. 297-304. These expert and consultant fees cannot

---

[11]Half of the cost listed for the entry "Exhibit Binders and copies of exhibits," or $112.04, is allotted to "copies of exhibits."

[12]Plaintiffs concede the expert fees they request are not reimbursable under the IDEA. They argue, however, that this does not preclude reimbursement because expert fees can be recovered under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq*. Plaintiffs cite no authority, and I can find none, to support their position that when claims are brought primarily under the IDEA, expert fees that are not recoverable under the IDEA can be reimbursed under the ADA or by way of any other statute under which claims are also brought. It is inconceivable that the Supreme Court in *Arlington* would hold that expert or consultant fees incurred by prevailing parents in connection with an IDEA case are not recoverable, but allow these fees under the ADA in the same case. *See Arlington*, 548 U.S. 297-304.

be allowed. Plaintiffs are therefore awarded $473.32 in costs.

 An appropriate order follows.